**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT WILLIAMS,**

                                                    **Petitioner,**

**v.**                                                              **9:09-CV-0419**
                                                                         **(TJM)**

**DALE A. ARTUS, Superintendent,**

                                                    **Respondent.**

_____
**APPEARANCES:**                                 **OF COUNSEL:**

**FOR THE PETITIONER:**

**ROBERT WILLIAMS, 05-B-0953**
  Petitioner, _pro se_
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY  12929

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**                  **LEA L. LA FERLITA, ESQ.**
Attorney General for the State of New York    Assistant Attorney General
120 Broadway
New York, NY 10271

**THOMAS J. MCAVOY**
**UNITED STATES DISTRICT JUDGE**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

**I.**      <u>**BACKGROUND**</u>

     **A.**      <u>**State Court Proceedings**</u>

        The state court record supplied to this Court reflects that on July 20, 2002 at 11:11 p.m.,

Broome County 911 Dispatcher Gary Lowe received a 911 call for assistance originating from a

home located in Binghamton, New York which terminated before the dispatcher could speak to the caller. *See* Transcript of Trial of Robert Williams Jr. (2/3/2005) ("Trial Tr.") at pp. 620-24. The dispatcher sent out a request for assistance from the police, and Officer Matthew Zandy of the Binghamton Police Department arrived at the residence from which the call was placed soon after the 911 call. *Id*. at pp. 629-32. As Officer Zandy approached the house, he heard three or four gunshots, and then saw a black male pass by a side window. *Id*. at pp. 636-37. Soon thereafter, the individual pointed what the officer believed to be a handgun at Officer Zandy. *Id.* at p. 641. After the officer started backpedaling toward his patrol car, another individual exited the residence, and the two men entered a car and fled the scene. *Id.* at pp. 645-47. A subsequent search of the home revealed that two people, later identified as Devin Spears ("Devin") and Valerie Spears ("Valerie"), were lying face down on the basement floor. *Id.* at p. 814. Neither of the victims were breathing or had any pulse. *Id.*

During the course of their investigation, law enforcement officials recovered from the home where the two victims had been killed, among other items, shell casings from a handgun as well as a baseball bat that was found on the dining room floor. *Id.* 880-886. The police subsequently learned that Vernon Parker, a co-defendant at the trial of petitioner, *pro se* Robert Williams, was married to the half-sister of Devin. *Id.* at p. 1045. Law enforcement agents also discovered during the course of their investigation that Parker had been criminally charged with molesting Devin and that those charges were still pending against him. *Id.* at pp. 1051, 1054, 1074.

At around 5:00 a.m. on July 21, 2002, the police arrived at Vernon Parker's residence, *id.* at pp. 1059-60, and, after a period of time, law enforcement officials succeeded in locating

2

Parker and arresting him, who was then transported, along with his wife, to the police barracks. *Id.* at pp. 1062; 1116-17.

At trial it was also established that Parker was friends with Williams, who believed the criminal charges which alleged that Parker had molested Devin to be false and that Valerie was blackmailing Parker through the accusation that Devin had been molested by him. *Id.* at pp. 1360-61, 1457. The two eventually agreed to "get rid of them, kill them," *id.* at p. 1361, and after obtaining handguns from a friend, the two drove to Spears' residence and forced their way inside. *Id.* Devin came upon the intruders and attempted to hit one of them with a baseball bat, however she missed and was thrown down a staircase. *Id.* at pp. 1362-63. Parker then informed Williams that it was "personal" and that he "got this," and directed Williams up a staircase. *Id.* at p. 1363. Soon thereafter, Williams heard gunshots. *Id.* at pp. 1363-64.

After he had been arrested by the police, Williams was informed of his *Miranda* rights,[1] but agreed to waive them and speak with the officers without an attorney. Trial Tr. at pp. 2345-48. Williams initially claimed that he was in the Baltimore, Maryland area during the time the crimes were committed. *Id.* at pp. 2348-49. However, when he was confronted with the fact that authorities determined that his cell phone had been used in the Binghamton, New York area around the time that Devin and Valerie had been killed, "his story was no longer [he] was in Baltimore, it was now [he had] gone somewhere near Binghamton but not into Binghamton." *Id.* at p. 2350. When the officer posed a "hypothetical question" to Williams, asking him why he had not shot the officer who was standing in front of the residence immediately after the shots were fired, Williams "replied almost instantly, '[b]ecause I didn't shoot anybody inside.' "

---

[1]       *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Id.* After a brief pause, Williams added "hypothetically." *Id.*

As a result of the foregoing, a Broome County grand jury returned an indictment against both Parker and Williams with respect to the murders of Devin and Valerie. In that accusatory instrument, Williams was charged with four counts of murder in the first degree and first degree burglary. *See* Indictment No. 02-503 (8/23/02) (Dkt. No. 9-1 at pp. 59-63). Williams' jury trial on the foregoing charges commenced on or about February 2, 2005, with Broome County Court Judge Martin E. Smith presiding. At the conclusion of that trial, Williams was found guilty of three counts of first degree murder and burglary in the first degree. Trial Tr. at pp. 2801-04.

On March 31, 2005, Judge Smith sentenced Williams to concurrent terms of life imprisonment without the possibility of parole on each of the three murder convictions, and a concurrent, determinate term of twenty five years imprisonment on his burglary conviction. *See* Transcript of Sentencing of Robert Williams (3/31/05) ("Sentencing Tr.") at pp. 23-24.

Williams appealed the foregoing to the New York State, Supreme Court, Appellate Division, Third Department, however in its decision dated November 1, 2007, that court unanimously affirmed the judgment of conviction. *People v. Williams*, 45 A.D.3d 905 (3d Dept. 2007). New York State's Court of Appeals denied Williams' application seeking leave to appeal the Appellate Division's decision to the Court of Appeals in a decision dated March 6, 2008. *See People v. Williams*, 10 N.Y.3d 818 (2008).

### B.    **This Action**

Petitioner timely commenced the present action in this District by filing a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on April 9, 2009. *See* Dkt. No. 1

("Petition").  Petitioner also attached to his petition a substantial supporting memorandum of law.  *See* Attachment to Petition ("Supporting Mem.").  In his pleading, Williams contends that he is entitled to habeas intervention because:  i) the verdict was not supported by legally sufficient evidence; ii) his sentence is "far too excessive," and therefore must be reduced by this Court; iii) he received the ineffective assistance of trial counsel; iv) he was denied his right to a fair trial due to "inflammatory and prejudicial comments made by the prosecution during the course of the trial;" v) the cumulative effect of the prosecution's errors improperly shifted the burden of proof to petitioner and deprived him of his right to a fair trial; and vi) the jury that convicted him did not represent a fair cross-section of his community.  *See* Petition and Supporting Mem.

On August 20, 2009, the Office of the Attorney General of the State of New York, acting on respondent's behalf, filed a response in opposition to Williams' petition.  Dkt. No. 12. Attached to that response is a memorandum of law in opposition to the petition.  *See* Attachment to Dkt. No. 12 ("Resp. Mem.").  The respondent has also provided the Court with state court records relating to the criminal matter below.  *See* Dkt. No. 9.  In opposing Williams' petition, respondent argues that Williams is procedurally barred from asserting certain of his grounds for relief, and that all of petitioner's claims lack merit.  *See* Resp. Mem.

On September 11, 2009, Williams filed a traverse in further support of his habeas application.  *See* Dkt. No. 15 ("Traverse").

This matter, which was re-assigned to this Court on July 13, 2010, *see* Dkt. No. 17, is currently before this Court for disposition.

## II.    DISCUSSION

### A.  Procedurally Barred Claims

As noted above, respondent claims that Williams is procedurally barred from obtaining habeas relief as to certain of the claims he has asserted in his petition.  Specifically, respondent claims that petitioner failed to fully exhaust the following habeas claims:  1) his claim challenging the sufficiency of the evidence adduced at trial; 2) his ground for relief alleging prosecutorial misconduct; and 3) his claim that contends that the cumulative errors committed by the District Attorney at trial entitle Williams to habeas relief.  *See* Resp. Mem. at pp. 19-21, 36-37.  Respondent further argues that, because the Appellate Division denied, on an independent and adequate state procedural ground, petitioner's claim which argued that the jury pool did not represent a fair cross-section of his community, Williams is also barred from obtaining federal habeas relief as to that ground.  *Id.* at pp. 40-42.

### i.  Unexhausted Claims

It is well-settled that a federal district court " 'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State ....' "  *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001)); *see also Hill v. Mance*, 598 F.Supp.2d 371, 375 (W.D.N.Y. 2009).  This is because "[s]tate courts, like federal courts, are obliged to enforce federal law."  *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)) (other citations omitted).  As the Supreme Court noted in *O'Sullivan*, "[c]omity ... dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."  *Id.*, 526 U.S. at 844

(citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).[2]

A petitioner exhausts available state remedies in the federal habeas context by: "(i) present[ing] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) inform[ing] that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen.,* 280 F.3d 87, 94 (2d Cir. 2001) (quoting *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)).[3] A "basic requirement" of this exhaustion doctrine is that "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (citation omitted); *see also Berry v. Hulihan,* No. 08 Civ. 6557, 2009 WL 233981, at *2 (S.D.N.Y. Jan. 28, 2009) (citations omitted); *Jackson v. Senkowski*, No. 03 CV 1965, 2007 WL 2275848, at *5 (E.D.N.Y. Aug. 7, 2007). A "state prisoner does not 'fairly present' a claim to a state court" where the appellate brief "does not alert [the court] to the presence of a federal claim ...." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *see also Williams v. Breslin*, No. 06-CV-2479, 2008 WL 4179475, at *3 (E.D.N.Y. Sept. 9, 2008) (citing *Baldwin*).

Nowhere in petitioner's appellate brief did counsel cite, or refer in any way, to any federal case, statute or provision of the United States Constitution, when counsel asserted her

---

[2]     This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan*, 526 U.S. at 845 (quotation and citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).

[3]     Habeas corpus petitioners bear the burden of demonstrating that they have fully exhausted available state remedies. *Fink v. Bennett*, 514 F.Supp.2d 383, 388 (N.D.N.Y. 2007) (McCurn, S.J.) (collecting cases).

appellate arguments that:  A) the convictions were based upon insufficient evidence; B) the prosecutor engaged in misconduct in the related criminal matter; or C) the cumulative effect of the prosecutor's misconduct deprived Williams of his right to a fair trial.  *See* Appellate Brief on Appeal (Dkt. No. 9-1) ("App. Br.") at pp. 4-22 (challenging sufficiency of evidence); 33-38 (claiming prosecutorial misconduct); 39-41 (claiming cumulative effect of District Attorney's misconduct shifted burden of proof to defense).[4]  Furthermore, none of the state court decisions cited by appellate counsel in the portions of her brief relating to the sufficiency of the evidence adduced at trial, or the cumulative effect of the claimed misconduct of the prosecution, refer to any decision of any federal court or any provision of the United States Constitution.  *See* App. Br. at pp. 4-21, 39-41.  Thus these two habeas claims, *see* Petition at Grounds One, Five, are patently unexhausted.

As to petitioner's fourth ground for relief, in which he claims that he was deprived of his right to a fair trial due to the "inflammatory and prejudicial comments made by the prosecution during the course of the trial," only two of the **state** cases cited by appellate counsel in her appellate brief referred, in any way, to a decision issued by the United States Supreme Court. *See* App. Br. at p. 33 (citing *People v. Ashwal*, 39 N.Y.2d 105 (1976)) and App. Br. at p. 38 (citing *People v. Dowdell*, 88 A.D.2d 239 (2d Dept. 1982)).  Furthermore, only the *Ashwal* case

---

[4]      In discussing the prosecutor's alleged misconduct, including the cumulative effect of that claimed misconduct, appellate counsel undeniably argued that such conduct violated Williams' right to a "fair trial." *See* App. Br. at pp. 33, 38-41.  However, it has been properly observed that merely asserting that one's right to a fair trial has been violated, without more, fails to alert the state court as to the existence of any federal claim. *Mendez v. Superintendent, Adirondack, Corr. Facility*, 94-CV-6500, 1996 WL 66117, at *2 (S.D.N.Y. Feb. 14, 1996); *Johnson v. Riley*, CIV. No. 88-3056, 1989 WL 62361, at *2 n.2 (E.D.N.Y. June 2, 1989); *cf. Kirksey v. Jones*, 673 F.2d 58, 60 (2d Cir. 1982); *Carr v. Fischer*, 283 F. Supp.2d 816, 829 (E.D.N.Y. 2003) (collecting cases).

cited a Supreme Court decision on an appellate issue similar to the claim raised by Williams in his fourth ground for relief.  *See Ashwal*, 39 N.Y.2d at 110 (citing *Berger v. United States*, 295 U.S. 78 (1935) for the proposition that, in its summation, the prosecution may not suggest to the jury that it consider irrelevant or inflammatory matters).[5]  Thus, to conclude that petitioner exhausted his habeas claim alleging prosecutorial misconduct, this Court must find that the state courts were adequately put on notice of the federal nature of this claim because appellate counsel's brief cited the *Ashwal* decision, which in turn referred to the *Berger* decision, which case in turn discussed the parameters of prosecutorial misconduct in the context of the prosecution's closing argument.  This Court rejects this proposition and finds that such an argument is "simply too soggy a reed upon which to rest a constitutional claim."  *Levine v. Comm'r of Corr. Servcs*, 44 F.3d 121, 126 (2d Cir. 1995); *Scullark v. Greiner*, No. 02CIV1834, 2005 WL 3454730, at *3 (S.D.N.Y. Dec. 15, 2005) (citing *Levine*).[6]

In light of the foregoing, this Court finds that Petitioner has failed to exhaust in the state courts the federal claims he now asserts in his first, fourth and fifth grounds for relief.

When claims have not been fully exhausted by a habeas petitioner, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim

---

[5]      In *Dowdell*, the Appellate Division's citation to the Supreme Court case of *Bruton v. United States*, 391 U.S. 123 (1968) was in support of its conclusion that appellant's claim that his right to confront witnesses against him at his trial had merit.  *Dowdell*, 88 A.D.2d at 246.  No such claim is asserted by Williams in this action.

[6]      Appellate counsel's application for leave to appeal to New York's Court of Appeals did not cite any federal or state cases in support of that request.  Instead, such application noted that the briefs and appendices submitted by both the Appellant and the Appellee had been forwarded to the Court of Appeals, and argued that "[f]or the reasons stated in Appellant's brief, Appellant urges that every issue of law presented by the record in this case be considered in conjunction with this application."  *See* Leave Application (Dkt. No. 9-4).

is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).[7]  Therefore, this Court must determine whether it would be futile for Williams to present any of the above-mentioned claims to the state courts.

Williams cannot now pursue any of the above theories through another appeal to the Third Department because a defendant is "entitled to one (and only one) appeal to the Appellate Division." *See Aparicio*, 269 F.3d at 91 (citations omitted).  Moreover, since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *id.* (citing New York's Criminal Procedure Law ("CPL"), § 440.10(2)(c)), petitioner could not now properly raise these claims, all of which are based on the record, in a motion to vacate his judgment of conviction pursuant to CPL § 440.10.  *See Aparicio*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994).  Therefore, petitioner's habeas claims alleging insufficiency of evidence, prosecutorial misconduct, and which argue that the cumulative effect of the prosecution's actions in the criminal matter below deprived Williams of a fair trial must all be "deemed exhausted" for purposes of his habeas application.  *St. Helen v. Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004); *Spence v. Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000).  Although these claims are "deemed exhausted," they are procedurally defaulted.  *See Aparicio*,

---

[7]       Under the Antiterrorism and Effective Death Penalty Act, a federal district court has the authority to deny (but not grant) an unexhausted claim on the merits, and consider the exhausted claims on the merits.  *Aparicio*, 269 F.3d at 91 n.5; *Cuadrado v. Stinson*, 992 F.Supp. 685, 687 (S.D.N.Y. 1998).

269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *see also*

*Ciochenda v. Artus*, No. 06 Civ. 5057, 2009 WL 1026018, at *5 (S.D.N.Y. Apr. 9, 2009)

(unexhausted claims which petitioner can no longer pursue in state court are procedurally

forfeited).

### ii.    Claim Denied on an Independent and Adequate State Procedural Ground

As noted above, respondent also argues that petitioner's final ground for relief – which

claims that he was denied his right to a fair trial because the jury that convicted him did not

represent a fair cross-section of his community – is procedurally barred under the "independent

and adequate state ground" doctrine of procedural default applicable to federal habeas petitions.

*See* Resp. Mem. at pp. 40-42.

"It is well established that federal courts will not review questions of federal law

presented in a habeas petition when the state court's decision rests upon a state-law ground that

'is independent of the federal question and adequate to support the judgment.'"  *Cone v. Bell*,

___ U.S. ___, 129 S.Ct. 1769, 1780 (2009) (quoting *Coleman*, 501 U.S. at 729) (other citation

omitted).  Where the Appellate Division finds that a party has failed to preserve an issue for

appellate review, such a determination "constitutes an independent and adequate state law

ground" precluding review of such a claim when later raised in a federal habeas corpus petition.

*See Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999); *Roberts v. Superintendent of the Attica*

*Correctional Facility*, No. 07-CV-285, 2008 WL 3833554, at *9 (W.D.N.Y. Aug. 15, 2008);

*Jackson*, 2007 WL 2275848, at *7.

In addressing Williams' appellate claim which argued that he was denied his right to a

11

fair trial because the jury pool from which the jurors that ultimately convicted him were drawn

did not represent a fair cross-section of his community, the Third Department found such

appellate claim to have been waived by Williams because he failed to make any written

objection to the jury pool in the related criminal matter. *Williams*, 45 A.D.3d at 906 (citing

CPL § 270.10 (2)).  "A finding by a state court that a party waived his or her right to appeal an

issue constitutes an independent and adequate state procedural ground for the denial of such a

claim." *DeVivo v. Superintendent, Auburn Correctional Facility*, No. 9:02-CV-0840, 2006 WL

581145, at *6 (N.D.N.Y. Mar. 8, 2006) (Kahn, J., adopting Report-Recommendation of

Peebles, M.J.) (citations omitted).

  The procedural requirement that objections to the racial composition of juries be

properly preserved as delineated in CPL § 270.10 – the statute cited by the Appellate Division

in denying Williams' appellate claim regarding the jury's racial composition –  is both " 'firmly

established and regularly followed' " by the New York courts. *Montana v. Conway*, No.

03-CV-6643, 2007 WL 3046673, at *11 (W.D.N.Y. Oct. 17, 2007) (citing *Epps v.*

*Commissioner of Corr. Services*, 13 F.3d 615, 619 (2d Cir. 1994)); *see also*, *McLeod v.*

*Moscicki*, No. 02 CIV. 9335, 2003 WL 22427757, at *6 (S.D.N.Y. Oct. 22, 2003)

(determination that party waives challenges to jury selection if no objection raised at time of

selection is "firmly established and regularly followed"); *cf. Garraway v. Phillips*, 591 F.3d 72,

75 (2010) (internal quotation marks and citations omitted).  Thus, as with the unexhausted

claims discussed more fully *ante*, Williams has procedurally defaulted on the jury cross-section

claim he asserts in his sixth ground for relief. *E.g.*, *Parker v. Phillips*, No. 05-CV-1323, 2008

WL 4415255, at *2 (E.D.N.Y. Sept. 24, 2008) (claims that are unpreserved for appellate review

are procedurally defaulted), *appeal dismissed*, *Parker v. Phillips*, No. 08-5382-pr (2d Cir. Mar. 31, 2009).

### iii.    Consequences of Procedural Default

Federal courts may only consider the merits of procedurally defaulted claims where the petitioner can establish both cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[8]  *See Dixon*, 293 F.3d at 80-81 (citing *Coleman*); *St. Helen*, 374 F.3d at 184 ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent' ") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (other citations omitted); *Parker*, 2008 WL 4415255, at *3 (federal courts may only consider procedurally barred claims where the petitioner establishes cause for his default and prejudice therefrom, or that he is actually innocent of the crime of which he was convicted).

To establish legal "cause" which would enable this Court to consider his procedurally forfeited claims, Williams must show that some objective, external factor impeded his ability to either fully exhaust his unexhausted claims, or properly preserve his jury cross-section claim for appellate review.  *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Pinero v. Greiner*, No. 01 CIV. 9991, 2007 WL 2712496, at *21 (S.D.N.Y. Sept. 17, 2007) (citing *Restrepo*).  Examples of such external factors include "interference by

---

[8]    A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002).

officials," ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's default.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Ikker v. Taylor*, No. 08 CV 3301, 2008 WL 5110866, at *4 (E.D.N.Y. Dec. 3, 2008), *appeal dismissed*, *Ikker v. Taylor*, No. 09-0090-pr (2d Cir. Apr. 17, 2009).

Williams has not attempted to establish legal cause for the procedural defaults detailed *ante* in his supporting memorandum of law or the substantial traverse he filed after respondent claimed that the above habeas claims were procedurally barred.[9]  Nor has this Court's review of the file in conjunction with this action suggested – much less established – legal cause for the procedural defaults noted above.

Since petitioner has not demonstrated legal cause for his procedural defaults,[10] this Court need not consider whether he has suffered the requisite prejudice, because federal habeas relief is unavailable under this limited exception permitting review of procedurally forfeited claims unless **both** cause and prejudice is demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006) (McCurn, S.J.); *D'Alessandro v. Fischer*, No. 01 CIV. 2551, 2005 WL 3159674, at *9 n.10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney*).

The finding that Williams has failed to establish cause for his procedural defaults does

---

[9]     Petitioner's Traverse consists of forty-seven (47) typewritten pages.  *See* Traverse.

[10]     The petitioner bears the burden of demonstrating cause for his procedural default and resulting prejudice.  *See Simpson v. Portuondo*, No. 01CIV.8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

not necessarily preclude this Court from considering his procedurally forfeited claims,

however, because, as noted above, a federal court may nonetheless properly review such claims

if it is convinced that the failure to consider the defaulted claims would amount to a

fundamental miscarriage of justice.  *E.g.*, *Dixon*, 293 F.3d at 80-81 (citation omitted).  On this

question, however, the Second Circuit has noted that:

> [T]he fundamental miscarriage of justice exception is "extremely
> rare" and should be applied only in "the extraordinary cases."
> *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995).....  " '[A]ctual
> innocence' means factual innocence, not mere legal
> insufficiency."  *Bousley*[], 523 U.S. [at] 623 ....  "To establish
> actual innocence, [a] petitioner must demonstrate that, 'in light of
> all the evidence,' 'it is more likely than not that no reasonable
> juror would have convicted him.' "  *Id.* (citing *Schlup*, 513 U.S.
> [at] 327-28) ... (some internal citations and quotation marks
> omitted).

*Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003); *see also D'Alessandro*, 2005 WL 3159674,

at *8; *Marengo v. Conway*, 342 F.Supp.2d 222, 228 (S.D.N.Y. 2004).

After having reviewed the evidence adduced at trial, including substantial portions of

the trial transcript provided to the Court by the respondent, this Court endorses the observation

of the trial judge who, in sentencing petitioner, noted that "the evidence of [Williams'] guilt in

th[e] case [was] absolutely and totally overwhelming."  *See* Sentencing Tr. at p. 21.

Since Williams cannot seek safe harbor from the dismissal of the above claims under

this final exception permitting habeas review of his procedurally defaulted claims, the Court

denies, as procedurally forfeited, his first, fourth, fifth and sixth grounds for relief.[11]

---

[11]     Even if the Court were inclined to find that petitioner's habeas claims regarding
sufficiency of the evidence and prosecutorial misconduct were exhausted and therefore not
procedurally barred, this Court would nonetheless find that these claims fail on the merits.
Specifically, the overwhelming evidence of his guilt adduced at trial conclusively establishes

### B.      Remaining Claims

#### 1.      Sentencing Claim

In his second ground for relief, Williams argues that, in the interests of justice and considering all relevant circumstances, the sentences imposed on him by Judge Smith are "far too excessive."  Petition, Ground Two.

It is well-settled, however, that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing *Underwood v. Kelly*, 692 F.Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989)); *see also Brown v. Donnelly*, 371 F.Supp.2d 332, 343-44 (W.D.N.Y. 2005); *Jackson v. Lacy*, 74 F.Supp.2d 173, 181 (N.D.N.Y. 1999) (McAvoy, C.J.) ("[i]t is

_____

that the Third Department's decision rejecting his challenge to the sufficiency of evidence (*see Williams*, 45 A.D.3d at 905-06) is neither contrary to, nor reflects an unreasonable application of, *Jackson v. Virginia*, 443 U.S. 307, 316-22 (1979); *In re Winship*, 397 U.S. 358, 361-64 (1970) or other relevant, clearly established Supreme Court precedent.  Thus his initial ground for relief is also properly denied on the merits.

This Court similarly finds that, even considering the substance of petitioner fourth and fifth grounds alleging prosecutorial misconduct, (both that he was denied his right to a fair trial due to "inflammatory and prejudicial comments made by the prosecution during the course of the trial" (Petition, Ground Four) and that the cumulative effect of the prosecution's errors improperly shifted the burden of proof to petitioner and deprived him of his right to a fair trial (*id.*, Ground Five), such claims must be denied because Williams has failed to demonstrate that the claimed misconduct " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' "  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also Smith v. Phillips*, 455 U.S. 209, 219 (1982).

This Court additionally finds that petitioner has failed to demonstrate that the Third Department's denial of his fair cross-section claim (*see Williams*, 45 A.D.3d at 906; *see also* Petition, Ground Six) is either contrary to, or represents an unreasonable application of, relevant, clearly established Supreme Court precedent relating to such claims.  *See Taylor v. Louisiana*, 419 U.S. 522, 530 (1975) (noting that the Sixth Amendment guarantees a criminal defendant a jury selected from a fair cross section of the community); *Duren v. Missouri*, 439 U.S. 357, 364-68 (1979) (opining that a claim of discrimination regarding the selection of the jury venire may be brought under that Amendment).

well-settled ... that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law").

Petitioner has not argued, and nothing before this Court suggests, that the sentences imposed on him by the trial court are illegal or otherwise exceeded the maximum term permitted by New York law.  Thus, this Court cannot grant his habeas application based upon a claim that the imposed sentences are unconstitutionally harsh and excessive.

Arguably, this ground could be construed as a claim that his sentences amount to a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271 (1980).  As an initial matter, however, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel*, 445 U.S. at 272; *see Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (Eighth Amendment only forbids sentences which are "grossly disproportionate" to the crime).  Moreover, it has been properly observed that "[a] sentence of imprisonment which is within the limits of a valid state statute is simply not cruel and unusual punishment in the constitutional sense. *Brumfield v. Stinson*, 297 F.Supp.2d 607, 622 (W.D.N.Y. 2003) (citing *Thompson v. Lord*, No. 97-CV-0792, 2002 WL 31678312, at *8 (N.D.N.Y. Nov. 8, 2002) (Peebles, M.J.) [, *adopted*, *Thompson v. Lord*, No. 97-CV-0792 (Dkt. No. 19) (N.D.N.Y. Sept. 25, 2003) (Scullin, C.J.)] (other citations omitted).

Petitioner has not provided anything to the Court which indicates that the sentences imposed on him arising out of his role in the deaths of Valerie and Devin, and the related burglary conviction, are "grossly disproportionate" to the severity of his crimes.  *E.g.,*

17

*Harmelin*, 501 U.S. at 995.  For these reasons, this Court therefore finds no basis upon which it may properly find that Williams is entitled to habeas relief based upon the claims asserted in the second ground raised by him in his petition.

### 2.   Ineffective Assistance of Trial Counsel

In his third ground, Williams claims he received the ineffective assistance of trial counsel.[12]  In support of such claim, he argues that trial counsel wrongfully failed to:  i) stipulate to the fact that the victims were killed in their home and to the manner in which they were killed, thereby allowing the jury to hear "graphic and disturbing testimony" (Supporting Mem. at p. 26); ii) highlight to the jury the fact that "the people's evidence was all circumstantial" (*id.*); and iii) "more strenuously" argue to the jury that the prosecution's witnesses "had absolutely nothing to say about" Williams or properly impeach prosecution witnesses. *Id.* at pp. 26-27.

### i.   Clearly Established Supreme Court Precedent

The Sixth Amendment to the United States Constitution provides that:  "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const., Amend. VI.  To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both:  i) that counsel's representation fell below an objective standard of reasonableness, measured in light of the prevailing professional norms; and ii) resulting prejudice that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.

---

[12]      In the criminal matter below, petitioner was represented by Joseph Cawley, Esq. and Randy Scharf, Esq.  *See* Supporting Mem. at p. 24.  This Court refers to both of these attorneys, collectively, as "trial counsel."

*Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland*).

### ii.   Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent

The Court will address each of the three theories Williams asserts in support of his claim that he received the ineffective assistance of trial counsel *seriatim*.

Petitioner initially faults counsel because he failed to enter into a stipulation concerning "the fact that the victims were killed in their homes and the manner in which they were killed." Supporting Mem. at p. 25. This claim, however, fails to acknowledge the fact that an attorney's decision as to whether to enter into a stipulation "is a strategic decision that defense counsel may make on the defendant's behalf." *Horan v. Conway*, No. 03-CV-0486, 2007 WL 1087492, at *10 (N.D.N.Y. Apr. 9, 2007) (Kahn, J.) (citing *Goicochea-Melchor v. United States*, No. 99 CIV. 729, 1999 WL 804146, at *5 (S.D.N.Y. Oct. 7, 1999)) (other citations omitted). As Senior Judge Thomas J. McAvoy has observed, "strategic choices of trial counsel are virtually unchallengeable in habeas corpus proceedings." *Ptak v. Superintendent*, No. 08-CV-0409, 2009 WL 2496607, at *8 (N.D.N.Y. Aug. 13, 2009) (internal quotation marks and citations omitted).

It is clear that defense counsel's strategy was to convince the jury that Williams was not at the scene of the crimes. For example, in his opening argument, trial counsel noted that "seven lay witnesses" would be testifying as to what occurred immediately during and after the murders, and that their testimony would be significant because "none of them are going to say

19

that Robert Williams, Jr., is the guy they saw in front of ... South Washington street holding a gun." Trial Tr. at p. 584. Counsel's opening statement further noted that "[n]one of the physical evidence secured at the scene, none of it, is evidence against Robert Williams, Jr., not a fingerprint, not a shell casing, not anything, nothing." *Id*. at pp. 585-86. Thus, it is apparent that counsel chose, for strategic reasons, not to enter into the stipulation now advocated by Williams because counsel's defense was based upon his contention that his client was not at the scene of the crime.[13] Under such circumstances, Williams is not entitled to habeas relief on this ground. *E.g.*, *Ptak*, 2009 WL 2496607, at *8. Moreover, in light of the overwhelming evidence of petitioner's guilt as discussed more fully *ante*, he cannot demonstrate that had his counsel entered into such stipulation, there is a reasonable probability that the outcome of petitioner's trial would have been different.

With respect to Williams' claim that trial counsel wrongfully failed to argue that the prosecution's evidence against petitioner "was all circumstantial," *see* Supporting Mem. at p. 26, the Court notes that this argument fails to acknowledge the fact that, although circumstantial evidence was undoubtedly utilized by the prosecution to establish petitioner's guilt of the charges brought against him, the Appellate Division properly noted that, in addition to such circumstantial evidence:

> there was direct evidence [of petitioner's guilt] from a Binghamton City police officer who testified concerning an admission by [Williams] to a fellow prisoner that he overheard while monitoring [Williams]. Additionally, two fellow inmates

---

[13] The fact that petitioner's counsel did, in fact, enter into certain stipulations concerning factual matters in the criminal matter below, *see*, *e.g.*, Trial Tr. at p. 2736, lends further support to the proposition that counsel chose, for strategic reasons, to refrain from entering into the stipulation now advanced by Williams.

> testified as to extremely incriminating statements made by
> [Williams] to them while in the County Jail.

*Williams*, 45 A.D.3d at 905.  Therefore, petitioner's current claim that trial counsel acted in an objectively unreasonable manner because such counsel failed to argue to the jury that only circumstantial evidence of Williams'  guilt was offered at trial must be denied as spurious and contrary to the record.

In his final theory in support of his ineffective assistance claim, Williams argues that his trial counsel could have "more strenuously":  A) argue that the prosecution's witnesses "had absolute nothing to say about" Williams; and B) highlight the character defects of the prosecution's witnesses.  Supporting Mem. at p. 27.

In conjunction with this action, substantial portions of the transcript of petitioner's trial have been reviewed.  That review demonstrates that trial counsel zealously represented Williams, and that counsel vigorously cross-examined the prosecution's witnesses.  Indeed, the record reflects that, after closing arguments were delivered by counsel, Judge Smith specifically "commend[ed] the attorneys for the manner in which each of them ... carried out their respective responsibilities as advocates."  Trial Tr. at p. 2721.  Petitioner's argument that trial counsel failed to properly highlight to the jury the weaknesses in the prosecution's case against Williams, and/or effectively impeach the character of the witnesses called by the District Attorney at trial, overlooks the actual performance of counsel at that proceeding, which the County Court found to be commendable and clearly fell comfortably within the bounds of the effective assistance of counsel.  The Court therefore denies petitioner's third ground for relief.

21

III.     **CERTIFICATE OF APPEALABILITY**

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court ....[14]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Since Williams has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**WHEREFORE**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED**, that Williams' Petition (Dkt. No. 1) is **DENIED** and **DISMISSED**; and it is further

**ORDERED**, that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action; and it is further

**ORDERED**, that any state court records that were not filed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

---

[14]     Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  *See* Fed.R.App.P. 22(b).

A Certificate of Appealability shall not be issued by this Court.

**IT IS SO ORDERED.**

Dated: August 20, 2010

Thomas J. McAvoy
Senior, U.S. District Judge